UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

PEARLINE RUFFIN,

    Plaintiff,

v.                                         Case No. 2:21cv251

ANTHEM, INC.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Anthem Inc.'s ("Anthem") Motion for Summary Judgment. ECF No. 20. In this action, Plaintiff Pearline Ruffin ("Plaintiff"), alleges that her former employer, Anthem, discriminated and retaliated against her based on her race. ECF No. 1. On October 15, 2021, the parties consented to jurisdiction before the undersigned United States Magistrate Judge ("undersigned") pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. ECF No. 10. The matter having been fully briefed, the undersigned makes this ruling without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the reasons set forth below, Anthem's Motion for Summary Judgment, ECF No. 20, is **GRANTED**.

### I. PROCEDURAL BACKGROUND

Plaintiff's two-count Complaint alleges racial discrimination and harassment and retaliation in violation of 42 U.S.C. § 1981. ECF No. 1 at 4–6. The first count, racial discrimination and harassment, alleges that Anthem subjected Plaintiff to an unlawful hostile work environment, and that Anthem unlawfully terminated Plaintiff because of her race and subjected her to disparate treatment in her unlawful termination. *Id.* at 4–5. The second count, retaliation,

alleges that Anthem retaliated against Plaintiff when she complained of discrimination based on her race. *Id.* at 5–6.

On March 16, 2022, Anthem filed a Motion for Summary Judgment, and accompanying memorandum in support. ECF No. 20–21. By her attorney, Plaintiff filed a memorandum in opposition on March 30, 2022, and Anthem filed a Reply on April 5, 2022. As such, Anthem's Motion for Summary Judgment, ECF No. 20, is ripe for resolution.[1]

## II. STANDARD OF REVIEW

Summary judgment is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine dispute "as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(a); *Seabulk Offshore, Ltd. v. Am. Home Assur. Co.*, 377 F.3d 408, 418 (4th Cir. 2004). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party . . . [and] [a] fact is material if it might affect the outcome of the suit under the governing law." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015) (citations omitted). The moving party has the initial

---

[1] After the summary judgment motion was ripe, Plaintiff appeared at the Clerk's Office and requested a continuance so that she could find new representation. *See* ECF No. 24. On April 7, 2022, the Court issued an Order informing Plaintiff that until her counsel withdrew from her case, she was not permitted to file her own submissions with the Court. *See* ECF No. 26. Plaintiff's former attorney filed a motion to withdraw from the case the following day. ECF No. 27. On April 11, 2022, Plaintiff submitted her own "response," including a number of exhibits. *See* ECF No. 30. Several days later, Anthem filed a Motion to Strike Plaintiff's "response" on the grounds that it was an improper submission under the Local Rules, and that it relied in improper information including inadmissible documents and documents that were not provided in discovery. ECF No. 31. The Court then held a hearing on the motion to withdraw on April 18, 2022. ECF No. 34. Plaintiff advised the Court that she was expecting to retain new counsel, but that she was willing to represent herself if need be. *Id*; ECF No. 35. After encouraging Plaintiff to hire new counsel promptly if that was her intention, the Court also informed her that she would be required to follow all rules of the Court as a *pro se* party if she represented herself. *Id.* With that admonition, the Court granted the motion to withdraw. ECF No. 33. Plaintiff did not retain new counsel, and did not file a response to Anthem's Motion to Strike. For good cause shown, the Court granted Anthem's Motion to Strike. *See* ECF No. 35. Accordingly, the Court does not consider Plaintiff's improperly filed "response" in deciding the instant motion.

2

burden to show the absence of an essential element of the nonmoving party's case and to demonstrate that the moving party is entitled to judgment as a matter of law. *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 185 (4th Cir. 2004); *McLean v. Patten Cmtys., Inc.*, 332 F.3d 714, 718 (4th Cir. 2003); *see Celotex*, 477 U.S. at 322–25.

When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden then shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *McLean*, 332 F.3d at 718-19. Such facts must be presented in the form of exhibits and sworn affidavits. *Celotex*, 477 U.S. at 324; *see also M&M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 163 (4th Cir. 1993). To successfully defeat a motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of "some metaphysical doubt" concerning a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002); *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 330 F. Supp. 2d 668, 671 (E.D. Va. 2004). Rather, there must be sufficient evidence that would enable a reasonable fact-finder to return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 252.

Although the Court is not "to weigh the evidence and determine the truth of the matter" at the summary judgment phase, the Court is required to "determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249); *see also Jacobs*, 780 F.3d at 568-69. In determining whether there is a genuine issue for trial, "[t]he relevant inquiry is 'whether the evidence presents a sufficient disagreement to require submission

3

to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Stewart v. MTR Gaming Grp., Inc.*, 581 F. App'x 245, 247 (4th Cir. 2014) (quoting *Anderson*, 477 U.S. at 251–52).

### III. STATEMENT OF UNDISPUTED MATERIAL FACTS

The Court has fashioned its undisputed material facts from those facts put forth by the parties which were uncontested, consistent with Eastern District of Virginia Local Rule 56(b). The Court resolves the motions for summary judgment pursuant to the following undisputed material facts:

Plaintiff is a Black woman who was employed in the Credentialing Department of Anthem. ECF No. 21 at 2, Anthem Statement of Facts ("Anthem SOF") ¶ 1; ECF No. 22 at 2, Ruffin Statement of Facts ("Ruffin SOF") ¶ 1. In March 2016, Plaintiff transferred from the initial credentialing team to the recredentialing team to work as the Credentialing Coordinator under the management of Grace Quist. ECF No. 21 at 2–3, Anthem SOF ¶¶ 1–2; ECF No. 22 at 2–3, Ruffin SOF ¶¶ 1-2. Quist is Asian. *Id.* Grace Diaz ("Diaz"), the Staff Vice-President, supervised Quist. *Id.* Cristina Khalaf ("Khalaf") was the Human Resources Business Partner for the Credentialing Department. *Id.*

On October 19, 2016, Plaintiff called the Anthem compliance hotline and reported that Quist was improperly using a form in the recredentialing process. ECF No. 21 at 3, Anthem SOF ¶ 3; ECF No. 22 at 2, Ruffin SOF ¶ 3. Throughout the next couple months, Plaintiff reported that in retaliation for reporting Quist, Quist left her off e-mails, wanted to move her desk so Plaintiff could supervise temporary employees, and checked out a laptop under Plaintiff's name. ECF No. 21 at 4, Anthem SOF ¶ 3; ECF No. 22 at 2, Ruffin SOF ¶ 3. Anthem opened a file summarizing Plaintiff's allegation of retaliation by Quist. ECF No. 22 at 2, Ruffin SOF ¶ 3. Plaintiff says she

4

told Lauren Cordrey ("Cordrey"), an employee in Anthem's Ethics and Compliance Department, that she had concerns that Quist was retaliating against her after Plaintiff reported Quist allegedly checked out a laptop in her name. ECF No. 21 at 4, Anthem SOF ¶ 4; ECF No. 22 at 3, Ruffin SOF ¶ 3.

Plaintiff alleges she told Cordrey that Quist was racially discriminating against her. ECF No. 21 at 4, Anthem SOF ¶ 4; ECF No. 22 at 3, Ruffin SOF ¶ 3. Plaintiff told Cordrey that Quist was picking on Plaintiff like "'the other little Black girl that was in the spot before me.'" ECF No. 21 at 5, Anthem SOF ¶ 4; ECF No. 22 at 3, Ruffin SOF ¶ 3. She also claims that she told Cordrey that Quist made two racial comments including "on one occasion Quist said Plaintiff had 'accomplished a lot to be colored'; and that on one occasion . . . outside of Plaintiff's presence that 'some people in [Quist's] family . . . married Black people . . . but not [her] immediate family.'" *Id.* (parenthesis omitted and alterations in original). ECF No. 21 at 5, Anthem SOF ¶ 4. Plaintiff only spoke to one Anthem employee, Cordrey, about feeling racially discriminated against by Quist. ECF No. 21 at 5, Anthem SOF ¶ 4; ECF No. 22 at 3, Ruffin SOF ¶ 3; ECF No. 25 at 4.

In December 2016, Cordrey interviewed Quist, who claimed that Ruffin was "the issue." ECF No. 22 at 3, Ruffin SOF ¶ 3. In January 2017, Cordrey formally interviewed Ruffin where she detailed feeling retailed against by Quist for reporting her to Anthem's Ethics and Compliance Department. *Id.*

Outside of what she reported to Cordrey, Plaintiff additionally alleges that at some point during her employment Quist said that Plaintiff was "well educated to be colored" and at another point Quist asked Plaintiff "[w]hy do Black girls always wear wigs and tracks?" ECF No. 21 at 5–6, Anthem SOF ¶ 4; ECF No. 22 at 4, Ruffin SOF ¶ 3. In regard to the first comment, Plaintiff claimed that Quist, as an immigrant, "did not 'know [any] better,' so Plaintiff just 'let it go.'" ECF

5

No. 21 at 5–6, Anthem SOF ¶ 4 (alteration in original). Plaintiff does contend that she was offended by Quist using the term "colored." ECF No. 22 at 4, Ruffin SOF ¶ 3. Plaintiff also admits she "let the [second] comment go." ECF No. 21 at 6, Anthem SOF ¶ 4.

In January 2017, Quist suspected that two Anthem employees, Quorisa Handy and Ennis Cobb, were committing timecard fraud. ECF No. 21 at 6, SOF ¶ 5; ECF No. 22 at 4, SOF 4. The alleged timecard fraud consisted of the employees "stealing time" where they reported that they were working when they were not actually in the building. *Id.* At Anthem, the proper procedure for employees to report their times included logging onto their computers within ten minutes of entering the building. ECF No. 21 at 7, Anthem SOF ¶ 5. Employees were supposed to manually input the time that they logged into work on a database, "PeopleSoft". *Id.* Employees' entrances into the building were recorded electronically when they swiped their badge. *Id.* Per Anthem's policy all employees were required to report their time accurately. ECF No. 21 at 7, Anthem SOF ¶ 5. Quist supervised the initial investigation into Handy and Cobb. ECF No. 21 at 7, Anthem SOF ¶ 5; ECF No. 22 at 4, Ruffin SOF ¶ 4. Eventually Diaz and Quist recommended that those two employees be terminated for fraudulent timecard submissions. ECF No. 21 at 7, Anthem SOF ¶ 5; ECF No. 22 at 4, Ruffin SOF ¶ 4.

In February 2017, Anthem expanded the investigation into timecard fraud and the Associate Relations Resolution Team (AART) began handling the timecard fraud investigations into several different employees within the Credentialing Department. ECF No. 21 at 8, Anthem SOF ¶ 6. Those investigations uncovered several incidences of timecard found, so in March 2017 the AART began to investigate all the employees in the Credentialing Department. ECF No. 21 at 9, Anthem SOF ¶ 7. The investigations into the entire department were handled by Diaz, Khalaf, and Dennis Summerlin. *Id.* Summerlin, who is Black, was the primary investigator for AART

6

during the initial investigations into timecard fraud in February. *Id.*

On March 24, 2017, AART sent three human resources consultants the data of the employee badge swipe reports (BSRs) and PeopleSoft time entries for the entire Credentialing Department because there was a large of volume of timecard entries to audit. *Id.* Quist's teams' data, including that of Plaintiff, was assigned to Shannon Steltenpohl for review. *Id.* Steltenpohl, a White woman, was based in Louisville, Kentucky. *Id.* at n.11. She did not know any of the employees she was investigating at Anthem. *Id.*

On April 5, 2017, the human resource consultants provided audit reports to Summerlin who then provided the information to Diaz and Khalaf on April 20, 2017, that among fifty-five non-managerial employees in the Credentialing Department, the average number of timecard violations[2] was eleven. ECF No. 21 at 10, Anthem SOF ¶ 8. There were more than sixteen employees with at least fourteen violations. *Id.* The audit reports recommended that the employees with more violations than the department average receive "corrective action." *Id.* Anthem contends that after the investigation it found that Plaintiff had at least seventeen timecard violations between October 3, 2016, and March 23, 2017, after comparing her BSR and her time entries in PeopleSoft. *Id.* On those occasions, Plaintiff's manual "input start time was more than ten minutes earlier than her badge swipe for the same date." ECF No. 21 at 10-11, Anthem SOF ¶ 8. Plaintiff's shifts were scheduled to be 7:30 a.m. to 4:00 p.m., and Plaintiff claimed she inputted 7:30 a.m. into PeopleSoft when she got to her computer in the mornings. ECF No. 21 at 7, Anthem SOF ¶ 5.

On May 8, 2017, Anthem terminated Plaintiff. ECF No. 21 at 13, Anthem SOF ¶ 10. On that same day fourteen other employees were fired for timecard fraud. *Id.* Eight of the employees

---

[2] Where there was a greater than a ten-minute difference between when an employee entered the Anthem building to when they logged into their computer. ECF No. 21 at 10 n. 12.

7

fired on May 8, 2017, were Black, including Plaintiff. ECF No. 21 at 12, Anthem SOF ¶ 9. Three of the employees fired that day were White. *Id.* One employee was Asian. ECF No. 21 at 12-13, Anthem SOF ¶ 9. One employee was Hispanic. ECF No. 21 at 13, Anthem SOF ¶ 9. The remaining two employees' races were not confirmed. *Id.* One of the employees fired, a White woman, had less timecard violations than what Anthem alleged Plaintiff had. *Id.* at n. 14.

After Plaintiff was terminated in May 2017, she reported to the Equal Employment Opportunity Commission that she experienced fourteen incidents of discrimination at Anthem under the supervision of Diaz and Quist. ECF No. 21 at 4, Anthem SOF ¶ 3; ECF No. 22 at 2, Ruffin SOF ¶ 3. None of Plaintiff's complaints to the EEOC were about discrimination based on her race. ECF No. 21 at 4, Anthem SOF ¶ 3; ECF No. 22 at 2, Ruffin SOF ¶ 3.

## IV. DISCUSSION

### A. Anthem is Entitled to Summary Judgment on Plaintiff's Claims for Hostile Work Environment and Race Discrimination in Count I.

Count I of Plaintiff's Complaint alleges that Anthem discriminated against Plaintiff based on her race, including engaging in acts that constitute "harassment, a hostile work environment and disparate treatment." ECF No. 1, ¶ 27. Anthem interpreted Count I to allege a hostile work environment claim, as well as a race discrimination claim based on discriminatory discipline or discharge. *See* ECF No. 21 at 13. For the reasons stated below, Anthem is entitled to summary judgment on each claim in Count I.

#### *1. Plaintiff's Hostile Work Environment Claim is Untimely, and Even if it Were Timely, it Would Fail on the Merits.*

First, Anthem moves for summary judgment on the portion of Count I alleging hostile work environment on the grounds that it is time-barred, and fails on the merits because the alleged conduct was not sufficiently severe or pervasive to alter the conditions of Plaintiff's employment.

8

ECF No. 21 at 14–18. In response, Plaintiff argues that Count I should survive summary judgment because Plaintiff's claim is not time-barred, and because a reasonable jury could find that she was subjected to a hostile work environment and discriminated against based upon her race.

### a) Timeliness

A four-year statute of limitations applies to hostile work environment claims under 42 U.S.C. § 1981. *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 223 (4th Cir. 2016) (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 291–92 (4th Cir. 2004)). Thus, "unwelcome conduct" occurring four years prior to the filing of a complaint falls within the statutory period. *Id.*; *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 116–17 (2002) (noting that a hostile work environment claim involves repetitive conduct over a period of weeks and years culminating in one "unlawful employment practice."). However, pursuant to the continuing violation doctrine, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purpose of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period." *Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 2d 607, 620 (E.D. Va. 2011) (citing *Amtrak v. Morgan*, 536 U.S. 101, 105 (2002)). "In determining whether an actionable hostile work environment claim exists, we look to 'all the circumstances,' and '[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'" *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 222 (4th Cir. 2016) (emphasis and alteration in original) (quoting *AMTRAK v. Morgan*, 536 U.S. 101, 11617 (2002). In that case, an act within the statutory period "anchors" the previous acts that occurred outside the statutory period, and makes those previous acts timely under the continuing violation doctrine. *Edwards*,

9

760 F. Supp. 2d at 621.

Notably though, under the continuing violation doctrine, "incidents can only qualify as a part of the same hostile work environment claim if they are adequately linked—that is, if the incidents involve the same type of employment actions, occur relatively frequently, and are perpetrated by the same managers." *Mustafa v. Iancu*, 313 F. Supp. 3d 684, 693 (E.D. Va. 2018). On the other hand, if an incident occurring before the limitations period has no relation to the other acts, then the employee cannot recover for the prior acts. *Id.* (citing *AMTRAK*, 536 U.S. at 120).

Plaintiff filed her complaint on May 5, 2021. ECF No. 1. Based on a four-year statute of limitations, any acts contributing to Plaintiff's hostile work environment claim must have occurred on or before May 5, 2017. The only act that Plaintiff alleges occurred within that four-year period is her termination, which occurred on May 8, 2017. Thus, Plaintiff's hostile work environment claim is only timely if her termination is adequately linked to other acts she alleged contributed to her hostile work environment. *See Mustafa*, 313 F. Supp. 3d at 693.

Plaintiff relies on the following acts by Quist that she alleges contributed to her hostile work environment: (1) Quist's comment that Plaintiff was "well educated to be colored" (citing ECF No. 22, attach. 1 at 27 (Ruffin Dep. 373:15–19)); (2) Quist's comment asking Plaintiff why Black girls always wore wigs and tracks (citing ECF No. 22, attach. 1 at 27–28, 31 (Ruffin Dep. 376:1–5, 377:2–7)); (3) Quist's statement to Plaintiff that a certain employee's wig looked matted and dirty (citing ECF No. 22, attach. 1 at 30 (Ruffin Dep. 376:12–20)); and (4) Quist's alleged harassment that was similar to "the other little black girl that was in the spot before [Plaintiff]" (citing ECF No. 22, attach. 1 at 21–22 (Ruffin Dep. 308:4–14, 309:8–16)). In her deposition, Plaintiff stated that she did not remember when Quist made the comments to her. ECF No. 22, attach. 1 at 27 (Ruffin Dep. 373:20–22). However, Plaintiff confirmed that none of the comments

were made on or after May 4, 2017. ECF No. 21, attach. 2 at 45, 50 (Ruffin Dep. 146:11–18, 184:5–22). Plaintiff does not allege, nor cite any evidence, that managers or individuals other than Quist contributed to her hostile work environment.

Here, the incidents Plaintiff alleges created a hostile work environment do not involve the same type of employment actions, did not occur relatively frequently, and were not perpetrated by the same managers as her termination. *See Mustafa v. Iancu*, 313 F. Supp. 3d 684, 693 (E.D. Va. 2018). First, Plaintiff's termination is a type of employment action that is different from Quist's alleged comments about race. Second, Plaintiff has not put forth sufficient evidence that Quist's comments occurred relatively frequently, or occurred close in time with Plaintiff's termination. For example, Plaintiff could not identify when she complained to anyone at Anthem about race discrimination. *See* ECF No. 21, attach. 2 at 87–93 (Ruffin Dep. 303–09). Plaintiff stated that she complained to Cordrey "several times on the phone" about Quist's race-based comments, but could not provide any specific time when the comments were made, or when she told anyone about them. *Id.* at 87–98 (Ruffin Dep. 303–05) (stating "it was sometime before I got terminated"). In fact, the last time Plaintiff spoke with the person to whom she contends she complained of Quist's racial discrimination was in February 2017. ECF No. 21, attach. 2 at 108 (Ruffin Dep. 331:11–20). Third, the person who made the comments creating Plaintiff's alleged hostile work environment, Quist, was not involved in the decision to terminate her employment. Plaintiff offers no evidence other than her unsupported allegation that her termination was motivated by Quist's targeting Plaintiff for her race. ECF No. 22 at 5. On the other hand, Anthem proffered evidence from Khalaf and Quist that Quist was not involved in the decision to terminate Plaintiff. ECF No. 21, attach. 3 at 5; ECF No. 21, attach. 4 at 7–8. Further, Anthem proffered evidence from Khalaf that she and Diaz made the decision to terminate the top timecard offenders, and that the decision was supported

by AART, Anthem management, and Anthem's legal department. ECF No. 21, attach. 4 at 6.

Under these circumstances, Plaintiff has not offered sufficient evidence to demonstrate that her termination is adequately linked to other acts perpetrating an alleged hostile work environment such that her termination can anchor the alleged racially discriminatory comments by Quist which occurred outside the statutory period. Accordingly, the continuing violation doctrine does not apply, and Plaintiff's hostile work environment claim is barred by the statute of limitations. Thus, Anthem's Motion for Summary Judgment on Plaintiff's hostile work environment claim in Count I is **GRANTED**.

### b) Merits

Even if Plaintiff's hostile work environment claim was not barred by the statute of limitations, her claim would fail on the merits. Hostile work environment is an actionable theory under 42 U.S.C. § 1981. *Guessous*, 828 F.3d at 221. To succeed on a hostile work environment claim, a Plaintiff must demonstrate that: (1) she experienced unwelcome conduct; (2) the harassment was based on a protected characteristic; (3) that is sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) that is imputable to the employer. *Id.* (citing *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011)).

The third element, requiring that the harassment be "severe or pervasive" has a subjective and objective component. *Id.* (citing *E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009)). Subjectively, the Plaintiff must show she "did perceive, and a reasonable person would perceive, the environment to be abusive or hostile." *Id.* Objectively, the Court must look to "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quotations and citation

omitted). The objective inquiry is a "high bar" and "[i]ncidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard[]" and "rude treatment from coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor are not actionable." *Id.* (citing *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008). Similarly, "simply teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

In evaluating hostile work environment claims, courts have found that conduct is not sufficiently frequent or pervasive where the alleged harassment "involves isolated or scattered incidents occurring over the course of several months" or where the conduct involves "routine personnel disputes or differences of opinion." *Mustafa v. Iancu*, 313 F. Supp. 3d 684, 695 (E.D. Va. 2018). In *Mustafa*, the Court dismissed a hostile work environment claim where the employee's supervisor stated to the plaintiff, a south Asian man, "you people like to do your work in a certain way," because it was not sufficiently severe to state a claim for a hostile work environment. *Id.* at 695–96. Recognizing that the comment was potentially offensive, it was not physically threatening or humiliating, and was not as egregious as other hostile work environment claims involving racial epithets and slurs. *Id.* Similarly, in *Tims v. Carolinas Healthcare Sys.*, the court explained that comments like "you people" [and] "y'all blacks" were "insensitive and reprehensible" but did not rise to the level of severity "necessary to alter the terms and conditions of employment." 983 F. Supp. 2d 675, 681 (W.D.N.C. 2013). In contrast, the Fourth Circuit has found that deeply offensive racial epithets—which are not alleged to have occurred here—which are degrading and humiliating in nature, may be actionable even if the circumstance involves a

single incident. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 280 (4th Cir. 2015).

Here, Quist's use of the word "colored," her question as to why Black girls wore wigs, and her statement that one employee's wig looked matted and dirty, while potentially offensive and insensitive, do not rise to the level of severity necessary to alter the terms and conditions of Plaintiff's employment. At the outset, the Court notes that Plaintiff's general allegation that she was harassed in a similar manner as "the other little black girl" who previously held her position does not provide sufficient detail about how Quist allegedly harassed either Plaintiff or the other woman based on her race. Thus, that allegation is insufficient to establish severe or pervasive comment. Nonetheless, with respect to Plaintiff's other allegations contributing to an allegedly hostile work environment, in testifying about Quist's comment that Plaintiff was "well-educated to be colored," Plaintiff described the encounter as an innocent conversation, and stated that she "was offended that [Quist] used the term colored; but [] kind of just looked at [Quist]," thought "okay, she don't know any no better," and let the comment go. *Id.* at 128 (Ruffin Dep. 375:1–18). Plaintiff admitted the comment did not interfere with her ability to perform her job. *Id.* (Ruffin Dep. 375:16–18). As for the comment about a specific employee's wig looking dirty or matted, Plaintiff conceded that she only heard Quist make the comment on one occasion, and that it did not interfere with her ability to perform her job. *Id.* at 128–29 (Ruffin Dep. 377:2–22, 378:13–15). Finally, Plaintiff alleges that she told Cordrey about the comments, but despite sending numerous emails complaining of Quist's conduct unrelated to race, Plaintiff did not notify Cordrey or anyone else at Anthem in writing about Quist's race-based comments. *See* ECF No. 21, attach. 2 at 87–88 (Ruffin Dep. 303:18–22, 304:1–19). Such evidence is insufficient to create a genuine issue of material fact that the conduct at issue was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere. Accordingly, even if Plaintiff's

14

hostile work environment claim was not barred by the statute of limitations, her claim would fail on the merits.

### 2. *Plaintiff's Race Discrimination Claim in Count I Fails.*

Second, Defendant moves for summary judgment on the portion of Count I alleging race discrimination through disparate treatment because Plaintiff cannot demonstrate that comparable white employees were treated more favorably, and because Defendant had a legitimate, nondiscriminatory reason for Plaintiff's termination. Plaintiff's claim of racial discrimination pursuant to § 1981 may be proven through either direct evidence or circumstantial evidence using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (noting that the *McDonnell Douglas* framework applicable for claims under Title VII is used to analyze discrimination claims under § 1981). Under that framework, a plaintiff must establish a prima facie case of discrimination. *Id.* If the plaintiff meets his or her burden of establishing a prima facie case, the burden then shifts to the employer to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* Once an employer does so, the burden shifts back to the plaintiff to demonstrate, by a preponderance of the evidence, that the employer's proffered reason was a pretext for unlawful discrimination. *Id.* To demonstrate pretext, the Plaintiff must show "both that the reason was false, and that discrimination was the real reason for the challenged conduct." *Williams v. Ricoh Ams.*, 203 F. Supp. 3d 692, 697 (E.D. Va. 2016).

Because Plaintiff has not proffered direct evidence of intentional discrimination, she must proceed using the *McDonnell Douglas* burden-shifting framework. To establish a prima facie case of discrimination with regard to her disparate discipline claim, the plaintiff must show the following: (1) she is a member of a class protected class; (2) the prohibited conduct in which she

15

engaged was comparable in seriousness to misconduct of employees outside the protected class; and (3) the disciplinary measures enforced against her were more severe than those enforced against those other employees. *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993). For the purposes of this motion, the Court assumes that Plaintiff has demonstrated a prima face case of disparate discipline. However, for the reasons set forth below, Plaintiff cannot demonstrate that Anthem's legitimate, nondiscriminatory reason for her termination was pretextual.

Anthem argues that its termination of Plaintiff due to timecard fraud was a legitimate, nondiscriminatory reason for terminating her employment. Courts in the Fourth Circuit have recognized falsification of time records as a legitimate, nondiscriminatory reason for terminating an employee. *See, e.g., Corbin v. Fed. Express*, No. 4:15cv139, 2017 WL 4485899, at *14 (E.D. Va. May 19, 2017), *aff'd*, 717 F. App'x 319 (4th Cir. 2018) (finding termination based on falsification of time-card entries met the employer's burden of providing a legitimate, non-discriminatory reason for plaintiff's termination); *Yineng Wu v. SAIC-Frederick, Inc.*, No. CIV. CCB-11-2565, 2012 WL 4324900, at *1 (D. Md. Sept. 18, 2012) (granting summary judgment where plaintiff could not show employer's decision to fire her for falsification of time records was a pretext for discrimination). Anthem proffered sufficient evidence that after an investigation, it terminated Plaintiff, as well as fourteen other employees, for timecard fraud. First, Anthem proffered the declaration of Khalaf, who handled the investigation into the entire credentialing department. *See* ECF No 21, attach. 4 at 4–8. Khalaf stated in her declaration that the report from AART demonstrated at least seventeen days during the investigation period where the start time Plaintiff manually input was more than ten minutes earlier than her badge swipe. *Id.* at 5–6. Based on the audit report, Plaintiff had more than the average number of violations, and Anthem considered her a "top offender" in the timecard fraud investigation. *Id.* Additionally, Anthem

16

proffered Plaintiff's audit report, comparing her BSR and PeopleSoft time entries to demonstrate at least seventeen days where Plaintiff manually input a start time more than ten minutes before her badge swipe. ECF No. 21, attach. 10 at 63–67. Thus, Anthem has met its burden of producing a legitimate, nondiscriminatory reason for terminating Plaintiff.

Because Anthem has met its burden, the burden then shifts back to Plaintiff to establish by a preponderance of the evidence that Anthem's legitimate, nondiscriminatory reason was false, and that discrimination was the real reason for her termination. *See Williams*, 203 F. Supp. 3d at 697. Plaintiff offers little by way of evidence or argument to meet her burden. According to Plaintiff, she has proffered evidence "showing that Quist concocted a scheme to look into certain employee's time-card fraud," and subsequently initiated another inquiry to involve Ruffin. ECF No. 22 at 12. However, that argument fails to demonstrate that Anthem's reason for terminating Plaintiff was false, and is belied by the record. Rather, the record demonstrates that Quist initially suspected two other employees—Handy and Cobb—of timecard fraud, and others at Anthem, including the AART (not Quist) decided to expand the investigation into the entire Credentialing Department. ECF No. 21, attach. 4 at 3. Plaintiff does not explain why, if Quist devised this plan to rid herself of Ruffin, she did not initiate the investigation with Ruffin herself. Notably, Quist herself also received corrective action for not supervising her employee's adherence to the timecard policy. *Id.* at 8. Under these circumstances, Plaintiff has not met her burden of establishing Anthem's reason for terminating Plaintiff—significant timecard fraud—was a mere pretext for unlawful discrimination.

Accordingly, Anthem's Motion for Summary Judgment on the portion of Count I alleging race discrimination is **GRANTED.**

### B. Anthem is Entitled to Summary Judgment on Plaintiff's Retaliation Claim in Count II.

Anthem also moves for summary judgment on Count II of Plaintiff's Complaint alleging retaliation in violation of Section § 1981. Anthem argues that Plaintiff's retaliation claim fails because (1) Plaintiff cannot establish a prima facie case of retaliation as she did not engage in protected activity, and cannot establish causation—i.e., that Anthem took adverse action against her because she engaged in protected activity; and (2) Plaintiff cannot demonstrate that Anthem's legitimate, nondiscriminatory reason for her termination was pretextual. ECF No. 21 at 25–29. In response, Plaintiff argues that she has established a genuine dispute of material fact as to her prima facie case because she proffered evidence that she complained to Anthem about Quist, and that she has shown causation through temporal proximity between her complaints and her termination. ECF No. 22 at 9–10.

Section 1981 also prohibits retaliation in response to protected activity in the workplace. 42 U.S.C. § 1981; *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Like in Count I, a retaliation claim can be established through direct evidence of discrimination, or circumstantial evidence using the *McDonnell Douglas* burden-shifting framework. *See id.* at 216 (noting that the *McDonnell Douglas* framework applicable for claims under Title VII is used to analyze retaliation claims under § 1981). Thus, in the absence of direct evidence, a plaintiff must demonstrate retaliation by establishing a prima facie case of retaliation, and rebutting the employer's legitimate, nondiscriminatory reason for the adverse employment activity to demonstrate pretext. *Id.*

To establish a prima facie case of retaliation, the plaintiff must show: (1) he or she engaged in protected activity; (2) the employer took adverse action; and (3) that a causal relationship exists between the protected activity and the adverse employment action. *Id.* at 217 (citing *Foster v.*

18

*Univ. of Md.-Eastern Shore*, 787 F.3d 243, 253 (4th Cir. 2015). Importantly, to succeed on a claim for retaliation based on race, the protected activity must involve complaints of discrimination based upon race. *Salley v. Sch. Bd. of Amelia Cnty., Virginia*, No. 3:20cv939, 2021 WL 5760893, at *21 (E.D. Va. Dec. 3, 2021) (citing *Ali v. BC Architects Eng'rs, PLC*, No. 1:18cv01385, 2021 WL 2816016, at *6 (E.D. Va. May 28, 2021). In other words, "§ 1981 covers claims for retaliation, but only 'for complaining about racial discrimination.'" *Id.* (citing *Liegeois v. Johns Hopkins Med.*, No. 15-2919, 2016 WL 1625121, at *6 (D. Md. 2016), aff'd, 692 F. App'x 714 (4th Cir. 2017)).

In this case, Plaintiff has not proffered sufficient evidence that she engaged in protected activity to demonstrate a prima facie case of retaliation. Plaintiff argues that she engaged in protected activity by making repeated complaints about Quist to others at Anthem before she was fired. ECF No. 22 at 10 (citing ECF No. 22 attachs. 2–8). Those exhibits demonstrate that Plaintiff made numerous complaints to Anthem about Quist, including, among other things, Quist's use of an incorrect document, allegedly checking out a laptop in Plaintiff's name, leaving Plaintiff off important emails and out of important meetings, and moving Plaintiff to sit with temporary employees. *Id.* Plaintiff made clear she believed those actions were taken "in retaliation." However, Plaintiff's deposition testimony, which is the only evidence proffered that she ever complained to any superior about race-based harassment or discrimination involving Quist, is muddled, at best. *See* ECF No. 21, attach. 2 at 66-101 (Ruffin Dep. at 231-316). In any event, even giving Plaintiff the benefit of all reasonable inferences, she offered no evidence that Cordrey ever communicated Plaintiff's concerns about Quist's *race-based* comments to any of the decisionmakers involved in her termination.

Most importantly, even if Plaintiff could demonstrate a prima facie case, as previously

19

explained (*see supra*, Section IV.A.2), Anthem had a legitimate, nondiscriminatory reason for terminating her employment, and Plaintiff has not offered any evidence to create a genuine issue of material fact that Anthem's reasons for terminating her employment was a mere pretext for retaliation. Accordingly, Anthem's Motion for Summary Judgment on Count II is **GRANTED.**

## V. CONCLUSION

For the reasons set forth above, Anthem's Motion for Summary Judgment, ECF No. 20, is **GRANTED**, and this case is **DISMISSED WITH PREJUDICE.**

Plaintiff may appeal this Dismissal Order by forwarding a written notice of appeal to the Clerk of the United States District Court, Norfolk Division, 600 Granby Street, Norfolk, Virginia 23510. The written notice must be received by the Clerk within thirty days from the date of the entry of this Dismissal Order. If Plaintiff wishes to proceed *in forma pauperis* on appeal, the application to proceed *in forma pauperis* is to be submitted to the Clerk of the United States District Court, Norfolk Division, 600 Granby Street, Norfolk, Virginia 23510.

The Clerk is **DIRECTED** to forward a copy of this Dismissal Order to Plaintiff and all counsel of record.

It is so **ORDERED.**

/s/ Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
September 23, 2022